UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMANDA MARY KHORASANI,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Case No. 1:23-cv-01444-CDB (SS)<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND AFFIRMING DECISION OF COMMISSIONER OF SOCIAL SECURITY<br><br>(Doc. 17) |

Plaintiff Amanada Mary Khorasani ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability benefits under the Social Security Act ("SSA" or "Act"). (Doc. 1). The matter is before the Court on the Administrative Record (Doc. 11, "AR") and the parties' briefs (Docs. 17, 20, 21), which were submitted without oral argument. Upon review of the record, the Court finds and rules as follows.[1]

I.      **BACKGROUND**

A.      **Administrative Proceedings and ALJ's Decision**

On October 28, 2020, Plaintiff filed an application for disability and disability insurance benefits with an alleged disability onset date of December 15, 2016. (AR 15). Plaintiff's claim

---

[1] On November 2, 2023, after the parties consented to the jurisdiction of a U.S. Magistrate Judge for all further proceedings pursuant to 28 U.S.C. § 636(c)(1), this action was reassigned to the undersigned. (Doc. 10).

was initially denied on March 16, 2021, and again upon reconsideration on December October 26, 2021.[2]  *Id.*  Plaintiff requested a hearing before an Administrative Law Judge on November 5, 2021. *Id.*  Joyce Frost-Wolf, the Administrative Law Judge ("ALJ"), held an online video hearing on July 20, 2022, during which Plaintiff agreed to appear and, after she was informed of the right to representation prior to and at the hearing, elected on the record to appear and testify without the assistance of an attorney or other representative.  (AR 16).  Impartial vocational expert Lauren E. Petkoff also appeared and testified by telephone.  *Id.*  After Plaintiff informed the ALJ about additional written evidence from Dignity Health, Kern Medical Center, and Omni Family Health Care, the ALJ found the requirements of 20 C.F.R. 404.935(b) were satisfied and requested that evidence on Plaintiff's behalf, and those records were added as Exhibits B11F-B13F.  *Id.*  The ALJ further updated the record with Plaintiff's prior electronic file and provided it to Plaintiff, who acknowledged receipt and review of the updated electronic file and did not make any objections to that file.  *Id.*

The ALJ issued an unfavorable decision on August 31, 2022, finding Plaintiff was not disabled.  (AR 12, 19-29).  The Appeals Council denied Plaintiff's request for review on August 10, 2023, rendering the ALJ's decision as the final decision of the Commissioner.  (AR 1).  Plaintiff subsequently filed this action seeking judicial review of the ALJ's decision.  (Doc. 1).

In the decision, the ALJ considered Plaintiff's claims using the five-step sequential evaluation required by 20 C.F.R. §§ 404.1520(a).  (AR 19-29).  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 15, 2016, the alleged onset date.  (AR 19).

At step two, the ALJ found that Plaintiff had the following severe medically determinable impairments ("MDIs") which significantly limit the ability to perform basic work activities as required by Social Security Ruling ("SSR") 85-28: degenerative disc disease of the cervical spine

---

[2] The ALJ noted that Plaintiff's alleged onset date implied a request to reopen an unfavorable decision made in her prior applications for disability and supplemental security income that were finally denied on February 24, 2020, and which the Appeals Council declined to review on July 29, 2020.  (AR 15).  The ALJ found no basis to reopen those prior applications and denied Plaintiff's implied request for reopening those applications.  *Id.* (citing 20 C.F.R. §§ 404.988 and 416.1488; Ex. B4A).

with radiculopathy, status-post C5-C6 anterior cervical discectomy and fusion (ACDF); degenerative disc disease of the lumbar spine; bilateral rotator cuff tears, status-post right shoulder rotator cuff repair; and generalized osteoarthritis.  (AR 19).

The ALJ found that Plaintiff had other MDIs, including in the form of dysthymia with chronic insomnia, hematuria, left ovarian cyst, obesity, reduced visual acuity, and status-post left-hand fracture.  (AR 21).  The ALJ noted that Plaintiff has alleged or suggested these impairments and the medical record indicates that they were being treated or controlled and were asymptomatic, and there is no indication in the medical record that these impairments imposed more than minimal work-related functional limitations for 12 or more months prior to March 31, 2019 (the date of Plaintiff's last insured date).  *Id.*  The ALJ therefore found these impairments were not severe.  *Id.* (citing SSR 85-28, 19-2p; Exs. B1F, B2F, B3F, B5F, B6F, B8F, B14F).

At step three, the ALJ found that Plaintiff did not have an impairment, or any combination of impairments, that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526).  (AR 23). The ALJ considered the severity of Plaintiff's mental impairments, considering whether the four broad functional areas of mental functioning listed in the "paragraph B" criteria are satisfied.[3]  The ALJ found that Plaintiff's mental MDI of dysthymia with chronic insomnia did not cause more than minimal limitation in her ability to perform basic mental work activities and was therefore non-severe.  (AR 22) (citing 20 C.F.R. Part 404, Subpart P, Appendix 1).  Because Plaintiff's mental impairments did not cause at least two "marked" limitations or one "extreme" limitation, and do not cause more than minimal limitation in Plaintiff's ability to perform basic mental work activities, the ALJ found the paragraph B criteria were not satisfied and that the mental impairments are non-

---

[3] The "paragraph B" criteria evaluate mental impairments in the context of four broad areas of functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. § Pt. 404, Subpt. P, App. 1.  The severity of the limitation a claimant has in each of the four areas of functioning is identified as either "no limitation," "mild," "moderate," "marked," or "extreme."  *Id*.  To satisfy the paragraph B criteria, a claimant must have an "extreme" limitation in at least one of the areas of mental functioning, or a "marked" limitation in at least two of the areas of mental functioning.  *Id*.

severe.  (AR 23).

Prior to step four, the ALJ found that Plaintiff has the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) except for the following non-exertional limitations:

> [Plaintiff] could have frequently used ramps or stairs, but she could have only occasionally used ladders, ropes, or scaffolds; she could have frequently performed stooping, kneeling, crouching, or crawling; she could have occasionally performed overhead reaching; and she could have not worked in environments with concentrated exposure to extreme cold, heat, heavy machinery with fast-moving parts, or unprotected heights.

(AR 23).

In considering Plaintiff's symptoms and the extent to which these symptoms can reasonably be accepted as consistent with objective medical evidence and other evidence, the ALJ noted she followed the two-step process as set forth in 20 C.F.R. § 404.1529, SSR 16-3p, and 20 C.F.R. § 404.1520c.  *Id.*  The ALJ noted that Plaintiff indicated that she was unable to work because of neck arthritis, bulging right-side disc, bursitis, rotator cuff tears, and tendonitis in both shoulders, bursitis of both hips, "brittle bones," headaches, knee pain, swollen joints, unspecified arthritis or osteoarthritis, and ovarian cysts.  (AR 24) (citing Exs. B4E, B5E, B8E).

Upon consideration of the evidence, the ALJ found that Plaintiff's MDIs could reasonably be expected to cause the alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of symptoms are inconsistent with the record and are not fully supported in light of her generally conservative treatment, limited positive examination findings, and reported functioning prior to her last insured date of March 31, 2019.  (AR 24-25).

The ALJ, considering the record of Plaintiff's hearing testimony, medical evidence, treatment notes, activities of daily living ("ADLs"), and prior administrative medical findings, determined that the record does not support limitations that would prevent her from working within the RFC.  (AR 25-28).  The ALJ concluded that the assessed RFC is supported by the evidence, including by Dr. Hayden Hamilton's examining source medical opinion and the medical findings of state medical consultants Dr. H. Jone and V. Michelotti, and that the RFC is consistent with the medical record as a whole.  (AR 28).

At step four, the ALJ determined that Plaintiff was capable of performing past relevant work

as a cosmetologist because such work did not require the performance of work-related activities precluded by Plaintiff's RFC.  (AR 28) (citing 20 C.F.R. 404.1565).

The ALJ therefore concluded a finding of "not disabled" was appropriate under sections 216(i) and 223(d) of the Act from December 15, 2016, through the date Plaintiff was last insured. (AR 29).

### B.     Medical Record and Hearing Testimony

The relevant hearing testimony and medical record were reviewed by the Court and will be referenced below as necessary to this Court's decision.

## II.     LEGAL STANDARD

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id*. (quotation and citation omitted).  "[I]t is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id*.

The court will review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which she did not rely.  Social Security Act § 205, 42 U.S.C. § 405(g).  In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).  Further, a district court will not reverse an ALJ's decision on account of an error that is harmless. *Id.*  An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. (quotation and citation omitted).  The party appealing

the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

A claimant must satisfy two conditions to be considered "disabled" and eligible for benefits within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. *Id*.

At step three, the Commissioner compares the claimant's impairment to impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity," defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations (20 C.F.R. § 416.945(a)(1)).

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

### III.    ISSUES AND ANALYSIS[4]

Plaintiff seeks judicial review of the Commissioner's final decision denying her application and raises one issue—whether the ALJ harmfully erred by failing her duty to develop the record. (Doc. 17 at 2).

///

///

---

[4] Filings are referenced herein according to the associated CM/ECF-designated pagination.

**A.      Whether the ALJ Harmfully Erred by Failing Her Duty to Develop the Record**

1.      Parties' Contentions

Plaintiff contends that she was prejudiced by her lack of representation at the ALJ hearing, and that the ALJ breached the heightened duty to ensure that the record was fully and fairly developed regarding her psychologically-based impairments during the period at issue. (Doc. 17 at 2).   Plaintiff argues the ALJ harmfully erred by failing to account for any psychological impairments as severe or even as an MDI at Step Two, by failing the heightened duty to further develop the record by sending her to a psychological consultative examiner, and by failing to account for any psychiatric-based limitations in the later steps of the sequential evaluation. *Id.* at 12. Plaintiff asserts that she was prejudiced by her "unknowing" and "unintelligent" waiver of her right to counsel as there is substantial record evidence that she suffered from a severe mental MDI given her dysthymia, which prevented her from understanding the psychological nature of her impairment such that she was prejudiced in advocating for herself at the hearing. *Id.* at 12-13.

Defendant contends that Plaintiff knowingly and intelligently waived her right to counsel and the ALJ had no duty to further develop the record. (Doc. 20 at 3).  Specifically, Plaintiff was apprised on three occasions—prior to the hearing on November 5 and December 2, 2021, and at the hearing on July 20, 2022—of her right to representation, that the agency could assist her in locating a representative, and of the potential consequences of proceeding without an attorney or representative. *Id.* at 4-5.  Defendant asserts the ALJ had no duty to further develop the record as Plaintiff attested that only her physical conditions impacted her ability to work, and the ALJ properly evaluated the severity of Plaintiff's dysthymia in finding the condition non-severe. *Id.* at 7-8.  Defendant further argues that Plaintiff's reliance on isolated symptoms documented in some of the medical records fails to establish any ambiguity or inadequacy to trigger the ALJ's duty to further develop the record. *Id.* at 10-11.

Plaintiff reiterates in reply that the ALJ had a heightened duty to develop the record regarding Plaintiff's possible mental MDIs to determine the effects of these impairments on her functioning in combination with physical impairments, and that the ALJ's failure to do so prejudiced Plaintiff given she was unrepresented under these circumstances.  (Doc. 21 at 2).

Plaintiff contends that her diagnosis of dysthymia, documented psychological symptomology, and referrals to psychology triggered the ALJ's heightened duty to develop the record.  *Id.* at 3.

### 2.    Governing Authority

Generally, "[t]he [plaintiff] has the burden of proving that she is disabled."  *Smolen v. Chater*, 80 F.3d·1273, 1288 (9th Cir. 1996).  However, "[t]he ALJ always has a 'special duty to fully and fairly develop the record and to assure that the [plaintiff's] interests are considered.'"  *Celaya v. Halter*, 332 F.3d 1177, 1183 (9th Cir. 2003) (quoting *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983)).  Further, "[w]hen a [plaintiff] is not represented by counsel, this responsibility is heightened."  *Id.*  This is because "Social Security proceedings are inquisitorial rather than adversarial."  *Schiaffino v. Saul*, 799 F. App'x 473, 476 (9th Cir. 2020) (quoting *Sims v. Apfel*, 530 U.S. 103, 111-12 (2000)).  In particular, the ALJ's duty to develop the record is heightened where the plaintiff may be mentally ill and thus unable to protect her own interests.  *Tonapetyan v. Halter*, 242 F.3d 1133, 1150 (9th Cir. 2001) (citing *Higbee v. Sullivan*, 975 F.2d 558, 561 (9th Cir. 1992)).[5]

Nevertheless, "[a]n ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence."  *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001); *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) (citing 20 C.F.R. §§ 404.1512(e), 416.912(e)); *see Brown v. Berryhill*, 697 F. App'x 548, 549 (9th Cir. 2017) ("Because the record evidence was not ambiguous and the record was sufficient to allow for proper evaluation of the evidence, the ALJ was not required to re-contact Brown's doctors or further develop the record.").

### 3.    Analysis

Plaintiff appeared without counsel at the ALJ hearing on July 20, 2022. (AR 147).  Plaintiff affirmed to the ALJ that she received information and resources regarding obtaining representation and "free legal services available" to Plaintiff, and that she did not "feel comfortable" proceeding with representation here given her experience with representation at the previous ALJ hearing dated February 11, 2020.  (AR 151).  After the ALJ readvised Plaintiff of her right to proceed with and

---

[5] *Tonapetyan* is miscited in Plaintiff's opening brief and reply brief as "424 F.3d 1144" (*see* Doc. 17 at 12; Doc. 21 at 2).

9

without representation, Plaintiff affirmed that she had no questions, understood the right, and that she would like to proceed without a representative. (AR 152). Plaintiff then testified in response to the ALJ's examination. (AR 155-76). The ALJ noted in her decision Plaintiff's assent to proceed at the hearing without representation. (AR 16).

At the hearing, the ALJ advised that she would find Plaintiff disabled if she had a physical or mental condition that kept her from doing any substantial gainful work and lasted or was expected to last 12 straight months. (AR 155). The ALJ informed Plaintiff that she would consider any evidence missing from the record and allowed Plaintiff additional time to submit or request additional evidence, if needed. (AR 157). After the ALJ inquired whether there had been any significant new diagnosis relating back to conditions that were affecting Plaintiff up until March 31, 2019, Plaintiff discussed her arthritis and bursitis issues. (AR 157-63). The ALJ then examined Plaintiff's work history as a cosmetologist and her symptomology testimony in that role. (AR 164-167). The ALJ thereafter reviewed Plaintiff's medical records and inquired about Plaintiff's activities of daily living, and Plaintiff testified concerning only her physical impairments in performing those activities. (AR 167-72). When asked whether Plaintiff would like to discuss any other conditions that were affecting her that were not already discussed, Plaintiff testified to having issues regarding a bulge in her neck and affirmed that her other physical ailments were getting worse since March 2019. (AR 173). Thus, despite having several opportunities to attest to the existence of any work-related limitations arising from mental health conditions, Plaintiff identified none.

In her decision, the ALJ noted that Plaintiff's mental MDI of dysthymia with chronic insomnia did not cause more than minimal limitation in her ability to perform basic mental work activities and was therefore a non-severe impairment. (AR 22). The ALJ considered the four areas of mental functioning, finding that Plaintiff's medical records showed that she had required or sought minimal mental health treatment from primary care providers, was treated only with a prescription for Ambien, and that she had generally normal psychiatric examination findings with no signs of consistent or persistent behavioral or cognitive abnormalities through her last insured date of March 31, 2019. *Id.* The ALJ further found that Plaintiff's reported activities of daily living

in driving, living with her daughter, enjoying art and poetry, and performing self-care chores, did not indicate that her daily functioning declined during the period at issue. *Id.* Plaintiff does not challenge or dispute the ALJ's cited reasons for these findings.

"Lack of counsel does not affect the validity of the hearing and hence warrant remand, unless the [plaintiff] can demonstrate prejudice or unfairness in the administrative proceedings." *Vidal v. Harris*, 637 F.2d 710, 714 (9th Cir. 1981). Where a plaintiff is not represented by counsel, "it is incumbent upon the ALJ to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *Cox v. Califano*, 587 F.2d 988, 991 (9th Cir. 1978) (citation omitted). The ALJ "must be especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Id.* "[T]he issue is not whether the right to representation was knowingly waived, rather, it is whether, in the absence of representation, the [ALJ] met the heavy burden imposed by *Cox*." *Vidal*, 637 F.2d at 714. "The ALJ's duty to develop the record fully is also heightened where the [plaintiff] may be mentally ill and thus unable to protect her own interests." *Tonapetyan*, 242 F.3d at 1150. If the evidence is ambiguous or inadequate to permit a proper evaluation of a plaintiff's impairments, the ALJ has a duty to "conduct an appropriate inquiry[.]" *Smolen*, 80 F.3d at 1288; *Mayes*, 276 F.3d at 459-60. "The ALJ may discharge this duty in several ways, including: subpoenaing the [plaintiff's] physicians, submitting questions to the [plaintiff's] physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record." *Tonapetyan*, 242 F.3d at 1150 (citing *Tidwell v. Apfel*, 161 F.3d 599, 602 (9th Cir. 1998)).

In light of the authorities cited above, the Court finds that Plaintiff's lack of representation at the hearing was not prejudicial because the ALJ did not fail to meet her duty to fully develop the record as to Plaintiff's mental impairments. As noted above, the ALJ properly considered the severity of Plaintiff's mental impairments in finding that they caused no more than mild limitations in any of the four areas of mental functioning and, thus, were non-severe during the period at issue. (AR 22). The ALJ reasoned that Plaintiff's records showing minimal mental health treatment history, normal psychiatric examination findings, and activities of daily living reflected Plaintiff's mental MDIs did not severely limit her ability to perform basic mental work activities.

11

Plaintiff maintains that the ALJ failed her duty to further develop the record by sending Plaintiff to a psychological consultative examiner.  (Doc. 17 at 12).  Under the relevant Social Security Ruling, an ALJ may elect to develop the record by obtaining a consultative examination ("CE").  *See* 20 C.F.R. §§ 404.1519a(b), 416.919a(b) (explaining that the Agency "may purchase a [CE] to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to … determin[e] … [the plaintiff's] claim.").  "[T]he Commissioner has broad latitude in ordering a [CE]." *Reed v. Massanari*, 270 F.3d 838, 842 (9th Cir. 2001) (quotation and citation omitted).  Cases that normally require employment of a CE include those where "'additional evidence needed is not contained in the records of [the claimant's] medical sources, and those involving an ambiguity or insufficiency in the evidence [that] must be resolved." *Id.* (internal quotations and citations omitted) (alternations in original).

Here, the ALJ did not find that any of the record evidence was ambiguous or that the record was inadequate.  To the contrary, the ALJ's citation to virtually all of the medical records that arguably implicate Plaintiff's proffered mental conditions reflects, if anything, an affirmative finding that the record was not ambiguous or inadequate. *See* (AR 21) (citing records).  Further, Plaintiff's citations to excerpts of the record fail to show that her mental health impairments cause more than a minimal impact on her ability to work.  Plaintiff's citations to treatment notes show only that Plaintiff at times was "assessed" with symptoms of mental impairments, including dysthymia, depression, and anxiety, but that Plaintiff's reported pain and associated work-related impediments was primarily the result of her physical impairments. *See, e.g.,* AR 399 (noting left ring finger pain due to injury and Plaintiff "has pain in her arms and numbness and tingling, and 'feels like I'm dying'"), 402 (noting "10/10" pain score with comments of "finger pain, arthritis pain"), 416-17 (noting Plaintiff is "under a lot of stress and is wanting advice on how to handle this" and a negative finding for anxiety and depression).  Indeed, the dysthymia condition Plaintiff largely relies on for the proposition that the ALJ failed to develop the record (Doc. 17 at 2, 5, 12-15; Doc. 21 at 205), was (1) referenced in the medical records on a single occasion (during a patient visit on June 1, 2017), (2) was an "assessment" made by a nurse practitioner with no apparent credentials or expertise in either psychiatry or psychology, and (3) was documented based

12

exclusively on Plaintiff's statements to the nurse practitioner, notwithstanding she declined to provide any information upon request about her psychological status. (AR 402).

Although the November 19, 2019, treatment record of Dr. Chao indicates that Plaintiff's emotional factors contributed to the severity of her symptoms and functional limitations, and Dr. Chao noted that Plaintiff is capable of low stress jobs, reasoning that she is unable to concentrate at high stress levels secondary to pain, the ALJ explained why she found Dr. Chao's opinion was not persuasive, and Plaintiff does not argue the ALJ's finding was erroneous. *See* (AR 2037). This opinion, as with the other evidence Plaintiff cites, does not show the record is inadequate to the extent of triggering the ALJ's duty to further develop the record. Therefore, Plaintiff fails to show how the record is inadequate or ambiguous as to her mental impairments such that the ALJ did not have a duty to develop the record on this evidence. *E.g.*, *Gutierrez v. Comm'r of Soc. Sec.*, No. 1:22-cv-01112-EPG, 2023 WL 7092229, at *2-3 (E.D. Cal. Oct. 25, 2023) (finding ALJ did not err by failing to obtain a psychological evaluation with intellectual testing where the ALJ made no finding regarding the inadequacy of the record and where the plaintiff "does not point to any specific evidence that is ambiguous regarding the effects of [p]laintiff's [mental MDI].").[6]

In sum, given Plaintiff's waiver of counsel at the hearing, her failure to demonstrate through testimony the existence of any mental impairments despite repeated examination by the ALJ concerning her disabling conditions, and the ALJ's reasoned consideration of the record in finding Plaintiff's mental impairments are non-severe, the Court is unable to find Plaintiff suffered any prejudice under the circumstances. *Cf. Anaya v. Kijakazi*, No. 1:21-cv-00366-SKO, 2022 WL 4082385, at *6 (E.D. Cal. Sept. 6, 2022) (finding record was ambiguous as to whether the plaintiff experienced a mental MDI based on plaintiff's testimony that "he had been in special education

_____

[6] Plaintiff's citations (Doc. 17 at 12, 16; Doc. 21 at 2-3, 6) to the Ninth Circuit's decision in *Tonapetyan* and the unpublished district court opinion in *Perez v. Astrue*, No. 2:07-cv-6726, 2009 WL 3170041 (C.D. Cal. Sept. 29, 2009) are not helpful. In both of those cases, the ALJ failed to explore at the hearing opinions offered by medical professionals in the field of psychology diagnosing the claimants with mental health disorders. Here, Plaintiff was not diagnosed with a mental health disorder and, in any event, the ALJ informed Plaintiff he would find her disabled due to any qualifying "mental condition" and asked Plaintiff several times during the hearing (AR 158-59, 161, 169, 173) to identify any conditions inhibiting her ability to work. Plaintiff did not identify any mental health-related conditions or symptoms.

13

and in school and had difficulty doing math" and "[d]espite this testimony, the ALJ did not ask Plaintiff any questions about possible mental limitations.") *with* *M.M. v. O'Malley*, No. 24-cv-03766-SVK, 2025 WL 1368180, at \*9 (N.D. Cal. May 12, 2025) (affirming Commissioner's decision because "the record does not support Plaintiff's allegations of 'inconsistencies' or 'incompleteness'" and "Plaintiff's failure of proof 'was not sufficient to trigger the ALJ's duty to develop the record.'") (citation omitted).

Insofar as Plaintiff asserts a Step Two challenge based on the ALJ's failure to consider the MDI of dysthymia and related psychological impairments at later steps of the sequential evaluation, (*see* Doc. 17 at 14-15; Doc. 21 at 4), the Court finds Plaintiff's challenge unsuccessful.

"In step two of the disability determination, an ALJ must determine whether the [plaintiff] has a medically severe impairment or combination of impairments." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 725 (9th Cir. 2011). A plaintiff has a severe impairment when the evidence establishes that an impairment has more than a minimal effect on an individual's ability to perform basic work activities. *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005); *Smolen*, 80 F.3d at 1290; 20 C.F.R. §§ 404.1522(a), 416.922(a) ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."). The regulations define "basic work activities" as "the abilities and aptitudes necessary to do most jobs," which include physical functions such as walking, standing, sitting, pushing, and carrying, and mental functions such as understanding and remembering simple instructions; responding appropriately in a work setting; and dealing with changes in a work setting. 20 C.F.R. §§ 404.1522(b), 416.922(b).

In the Ninth Circuit, step two of the disability inquiry is "a de minimis screening device to dispose of groundless claims." *Smolen*, 80 F.3d at 1290. Thus, "[i]f an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation should not end with the not severe evaluation step." *Webb*, 433 F.3d at 687 (citing SSR 85-28). Moreover, "once the ALJ finds the [plaintiff] has at least one severe impairment at Step Two, the ALJ must consider all the [plaintiff's] impairments when formulating the [plaintiff's] RFC, including those impairments the ALJ

14

determined to be non-severe." *Kim R.S. v. Kijakazi*, No. 5:21-cv-00546-JDE, 2022 WL 1405429, at *3 (C.D. Cal. May 4, 2022) (citing *Buck v. Berryhill*, 869 F.3d 1040, 1048-49 (9th Cir. 2017)). "Thus, even if an ALJ erred by finding a particular impairment to be non-severe at Step Two, the error is harmless so long as the limitations of that impairment are considered when formulating the [plaintiff's] RFC." *Id.* (citing cases).

Substantial evidence supports an ALJ's finding that a plaintiff mental impairments are non-severe if (1) she properly considered the plaintiff's mental health records, (2) she properly considered the Paragraph B criteria, and (3) the record supports her findings regarding the non-severity. *See Woods v. Kijakazi*, 32 F.4th 785, 794 (9th Cir. 2022).

In rating the degree of limitation in each of the four functional areas, an ALJ "will use the following five-point scale: None, mild, moderate, marked, and extreme." 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4). If the ALJ rates the plaintiff's limitations as "none" or "mild" in each of the four areas, the ALJ "will generally conclude that [the plaintiff's] impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in [the plaintiff's] ability to do basic work activities." 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1). Legal error occurs when an ALJ neglects to document her application of the paragraph B criteria or fails to include a specific finding as to the degree of limitation in any of the four functional areas. *Lee v. Kijakazi*, No. 3:20-cv-01596-H-BGS, 2022 WL 913057, at *4 (S.D. Cal. Mar. 29, 2022) (citing *Keyser*, 648 F.3d at 726).

Here, as noted above, the ALJ properly considered Plaintiff's testimony (which Plaintiff does not challenge or dispute), her mental health records and treatment history, and the Paragraph B criteria in assessing the severity of Plaintiff's mental MDIs in finding that she had no more than mild limitations in any of the four areas of mental functioning. (AR 22). The ALJ found that Plaintiff had no more than mild limitations with understanding, remembering, applying information, interacting with others, maintaining concentration, persistence, and pace, and adapting or managing oneself considering Plaintiff's allegations and minimal mental health treatment history and generally normal examination findings. *Id.* The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the

listed impairments under 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 23). Importantly, Plaintiff did not identify any issue with her mental impairments at the hearing. *See Kim R.S.*, 2022 WL 1405429, at *4 ("[I]f a [plaintiff] fails to raise an impairment at the administrative level, the ALJ is not affirmatively obligated to consider that impairment.") (citing *Domingue v. Barnhart*, 388 F.3d 462, 463 (5th Cir. 2004) (finding ALJ's conclusion that plaintiff's depression was not a severe impairment to be supported by substantial evidence because plaintiff did not contend that her depression was a severe impairment at the administrative level). Therefore, the ALJ's finding that Plaintiff's mental MDIs are non-severe is supported by substantial evidence. *Woods*, 32 F.4th at 794. Accordingly, the ALJ did not err in finding Plaintiff's mental impairments to be non-severe because the ALJ was not obligated to consider the impairment under these circumstances.

**CONCLUSION AND ORDER**

For the reasons stated above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (Doc. 17) is DENIED;

2. The ALJ's decision (Doc. 11) is AFFIRMED;

3. The Clerk of the Court shall enter judgment in favor of Defendant, terminate any deadlines, and close this case.

IT IS SO ORDERED.

Dated:   **July 8, 2026**

_____
UNITED STATES MAGISTRATE JUDGE

16